It's Kimberly Smith. Sorry, Leonard, I should have read the first names. Ms. Smith. Okay. So why don't you have 20 minutes, save some time for rebuttal, then you respond on both cases, and we'll try and keep them straight. Okay. Okay. Good morning. May it please the Court, my name is Kimberly Smith, and I represent the appellant's Yolo County Office of Education and Fairfield-Sasune Office of Education. I'd like to reserve 5 minutes for my rebuttal. Okay. And it counts down. I'll try to help you keep track. Okay. Thank you. The issue before the Court today is what should occur when the highest state educational agency, the California Department of Education, makes an adjudication about an issue under the IDEA and its supporting regulations through its compliance complaint process. CDA is taking the position that that should be the end of the road, that they should have some kind of pure immunity, and there would be no judicial review after the point of the CRP process. This is an untenable position for several reasons. Some courts have already found that parents who are part of the CRP process can seek judicial review. There is no court yet that has found that the local educational agency could also seek judicial review. But out of an interest of parity, we are advocating that that needs to occur. It also is in line with the overall tenets. Can I interrupt? Has the Ninth Circuit held that parents can seek judicial review in one of these compliance reviews? No. It's the Third Circuit and a district court in this State. But the Ninth Circuit has actually not weighed for either party whether there's judicial review. So this is an issue. So the symmetry argument applies if we treat the other circuits as controlling, but it's an open question for us. Exactly. And so we believe that both parties actually should have the opportunity to have judicial review, that the inquiry should not end with the California Department of Education, and that by allowing judicial review, that actually fits in with the structure of what Congress intended in the IDEA, that it would start with some form of an administrative process, at which point it would culminate with judicial review, and that the judiciary would have the final say as to whether there had been a violation of the statute or its regulations. The way that it's set up currently is there are two distinct and separate administrative processes. They are slightly different, but they are both adjudicatory processes. We have the formal or more formal hearing of due process. This deals with the broader issue of a student's identification, evaluation, or placement for their special needs under the IDEA. These are full evidentiary hearings. There's often lots of data associated with these questions. Expert witnesses come and testify. And the OAH, the Office of Administrative Hearings in California, holds the hearings and adjudicates those issues in a final decision. Now, here's my problem with your argument. I start out with a general assumption that judicial review of agency action is a good idea, but I need to find something in the statute that authorizes such judicial review. It's clear that we get judicial review of a due process hearing, but there's nothing in the statute that provides for judicial review of one of these other proceedings, and there's nothing in the regulation that provides it either. So we're supposed to infer from the silence. That's hard. Help me out. Yes, sure. And we obviously cannot point to anything in the regulations of the statute that calls for this judicial review. But we would argue that it's not completely silent in the legislative record. When you look at the Federal Register comment that's been discussed in both our papers, what you see is a recognition, I believe, by Congress that there would be some kind of judicial review following. The quote I would point to is we've chosen to be silent in the regulations about whether a State complaint decision may be appealed because we believe States are in the best position to determine what, if any, appeals process is necessary. So I believe that Congress contemplated that there would be judicial review following a State compliance complaint. But because it is a State agency that makes that decision, that somehow the State should decide what process is required past that. But I was actually persuaded by your analysis of this section, by your emphasis on the word reconsideration. It sounds as though that entire passage is directed to reconsideration at the agency stage rather than directed to any judicial challenge. And the word appeal here, it seems to me, to be directed at an administrative appeal with reconsideration at issue. Yes, I think that the reconsideration issue is discussed in there. But I also think we need to look at that, because what was being asked in the question, in the comment, was whether or not there would be appeal beyond the State agency. So I do believe that this is showing Congress's intent that there would be some further process and that the decision would not end with the CRP and with the State agency decision. The Court is also able to imply that a right of action exists when you look at the overall statutory scheme. Tell me why our decision in Lake Washington hasn't just shut that avenue down entirely, for your clients at least. Lake Washington is a completely different procedural posture situation. Lake Washington came out of the more extensive evidentiary hearing of due process. In that case, there was no actual CRP complaint at issue. We were in an evidentiary hearing, and a similar decision is also in this circuit's MM decision, that in the midst of due process, the local educational agency wanted to come to the Court and get judicial review of a decision by OAH before that final decision had been reached. So really, all Lake Washington is doing is analyzing Section 1415 in terms of when you have a final decision in due process. No. I guess I read it as saying it just does not create a private right of action for school districts to do anything. I still believe that is limited to the context of it not having been a due process case, and that it really has not ruled that way. Right. That's a stronger case for implying a right of action, because either school districts or parents could initiate a due process hearing, and there is an express right of action for the aggrieved party coming out of that process to go to court. It seems to me you're on much weaker ground saying that with respect to the CRP proceedings, that where there's no express provision for judicial review at all, that we should imply a right of action in favor of school districts in that context. It seems to me the weakest possible basis. Well, I think as I stated before, of course, it's our preference to have an express proclamation in the regulations or in the IDEA itself that a CRP process could seek. The disadvantaged party in a CRP process decision could then seek judicial review. And but there is the ability to imply that right of action under the standards that look at where the overall construction of the statute, what's supposed to be cited, the indication of legislative intent, which I believe can be distilled from that Federal Register comment, and that you want to imply a remedy consistent with the IDEA. The overall structure of the IDEA is to resolve disputes between local educational agencies and parents. There's a difference in the two processes, and you do need this more extensive hearing procedure in the more complicated, more dative-intensive cases. But like in this case where in YOLO where you have a deaf student that needs to know whether they get special instructions on a particular test, or in Fairfield where you need to know whether a particular student is entitled to certain hours of services, those are more discreet, narrow questions that the Department of Education wanted to carve out and create a separate but parallel administrative process that would not require the full evidentiary hearing. And they left that to the State Educational Agency to adjudicate it. And it's still an adjudication like due process is an adjudication. And so you need to – I would – I would posit that you need to imply that these two parallel adjudicative processes have to end with judicial review. It does not make sense that Congress would intend that the Department of Education could carve out a process that would then give this pure immunity to the State Educational Agency and to take out the ability of the Federal judiciary to decide whether, in the end, there had been a violation of the IDEA, which is ultimately what both these processes are looking to solve. And so if you – if you cut it off at the – at the end, in the midst, and don't give the aggrieved party the ability to judicial review, then you are allowing the State agency, as an adjudicative body – Roberts, can I stop you? Yes. You – am I right that your clients could get judicial review ultimately if the issue were, you know, the due process hearings are limited to certain types of issues, but if the beef you had, basically, with – with the State here related to one of those issues, you could eventually get judicial review by completing the CRP process and then shifting to the due process? Well, and I think that was suggested by the Eastern District in at least one of these cases. But that is problematic as well. Because the CRP process is not always between a parent and the local educational agency, those are the only parties that could have due process. And there's very limited, both either in subject matter – or let me just say it's limited in subject matter as to what you can initiate in due process. So say, for example, in the YOLO case, where we're dealing with whether this particular student should have had support during a test, that may not be sufficient to initiate a due process case, because it doesn't necessarily deal with, you know, identification of a disabled student, their evaluation, or their overall educational placement. It's a more discrete issue. And so even though in that case you have parties that could be to due process, you're basically – what the Eastern District was suggesting is that you basically start from the beginning. And that raises questions, too. What if you have inconsistent decisions? You know, if the CDE decides that we were in violation of the IDEA, we then go to a full OAH hearing and they decide we were not in violation of the IDEA, which decision controls for then the ultimate judicial review that you're suggesting? I also think it's unfair to parents when we're the educational agency having the decision, why should we drag parents into another administrative process that's going to require them to retain counsel, it's expense, it's time. And they really are meant to be separate but parallel, dealing with different issues under the IDEA. And so I think to call everybody to come back and do another process doesn't make sense. And I would also point out that in the regulation, in 300.152c1, it actually talks about if for some reason the issue was in both the CDE venue and the OAH venue, CDE has to stay its decision so that OAH can decide. And I think that shows that we really do – the IDEA and Congress does not want this risk of disparate decisions from two administrative processes. There needs to be one that needs to be the right one that the statute structure intends, and then once that adjudication is made and there's a final decision, it needs to be subject to a judicial review at that point. And I – I'm sorry. Kennedy, all this is interesting, complicated, and our law at the moment is not clear. However, there's a mootness problem. Tell me why these cases are not moot and why we could get to the merits. Okay. Yes. I think this is the typical case of the exception of mootness, you know, capability of repetition, yet evading review. The – what you need to look at is what is the potential repetitive injury. And while individual cases against – out of the CRP process may not have the exact same issues, I think we're talking about the broader issue of if an LEA is subject to a process under CRP and there's a decision that they believe is either procedurally or substantively at fault, and if they – even if they work it out with CDE or CDE does what they did here where they decide not to enforce, and I think they, therefore, force the mootness issue, there is great repetition or risk of repetition of the injury, meaning the local educational agency doesn't have the ability to get judicial review. If we're talking about – oh, yeah, please. No, no, go ahead. I'm a little bit at a loss as to that entire thing. I'm just wondering where it's going. You're saying that at one point I heard you say that the Congress indicated that a State should have a – some kind of a statute passed so that California could have – is there anything passed in California whereby there is some kind of relief local board against the State? No, if we – if we had that – you know, if we had a local – if we had a State statute to guide us, then we would pursue that process. And I only raised that comment by – in the Federal Register to show that there was an intent that this would not be the end of the line. I mean, it's an imperfect answer, only in that the States haven't necessarily taken up that suggestion and codified a procedure of how we then get to judicial review or if there's going to be another level of review on some administrative level. And I just believe that the Eastern District's suggestion that we basically go back to the starting line and initiate a new administrative hearing on everything in total is not practical and not fair to the parties. And one other question. You were talking here – well, go ahead. Go ahead. Pick it up. Well, okay. This is a slightly different question, but still addressed to Mootness. You were arguing on the capable of repetition, evading review. I'm wondering if there's an exception to Mootness that might – another one that might possibly apply, and that is voluntary cessation. That is to say, if the State can avoid judicial review by us of this or avoid our decision by saying, oh, well, here's our order, but we're not going to enforce it. I think that's exactly what we have in the Fairfield case. That means that they're fully in control as to whether or not an appeal can go forward. Absolutely. And the administrative processes are meant to happen fairly rapidly. Unfortunately, you know, courts cannot work as quickly. So there are possibilities that things can occur, either like you're suggesting that they just drop the enforcement or other issues where it no longer becomes applicable because maybe the child has graduated. And so out of those circumstances, there's a great chance that it will evade review because the cases – the actual need of the cases don't have the life necessary to sustain a full litigation. Yeah. You may not like the answer you get if this is not moot. Okay. But the mootness question, I confess, bothers me. Okay. I'm at my rebuttal time, so I'll defer. Thank you. Good morning, Your Honors. Len Garfinkel for the California Department of Education. I'd like to start, actually, just by addressing a couple of questions that each of you asked. First of all, Judge Duffy, there is a State writ procedure, at least in California, when a party feels that a State agency has exceeded its authority under State law. So that is one possible avenue. It's not specific to special education in any way, but it's a general procedure under the, quote, a simple procedure. Now, let me interject. You said a writ procedure when the agency has exceeded its authority under State law. The argument here is that there's a violation of Federal law. And actually, that procedure is not limited to a violation of under State law. Judge Fletcher, counsel was speaking with you about OSEP's commentary in response to the question, is there any avenue of judicial or administrative review here? And, yes, OSEP responded by stating that it's up to a State whether or not to adopt a reconsideration process. But I have in front of me in the briefs the response. Is there something here in the record that tells me or that gives me the question? There may be in the appendix. I'm not certain. Because what the question was actually might make a difference, as I understand the answer. Right. Yeah. I know we wrote in our brief that the question asked that very question, that was it a – is there any avenue of judicial or administrative review? And OSEP's response was only that a State could decide whether or not to have an administrative level reconsideration. But I think in their silence to a question about whether there's judicial review But as far as you can tell, you cannot point me to something in the record where I can read. I mean, I can go look at the Federal Register. I got that. But in the papers that are in front of me, there's nowhere where I can find the question. We did not quote the question. I apologize, Your Honor. I've learned over the years, trust but verify. Never, never simply take a lawyer's word for what the question was, the answer was, or anything else. Understood. Even though the lawyers are operating in absolute good faith, I need to check. All right. Thank you, Your Honor. Okay. Judge Fletcher, you also spoke about voluntary cessation. And, yes, understood that the final decision in this case came after receipt of a lawsuit. I would point out, however, though, that there has been no indication either prior to or after this particular incident in the Fairfield case that CDE has ever taken a similar position in any other situation. And there was a reference to Fairfield being informed and believing that it may have happened at some other time. But under Ashcroft v. Iqbal, that information and belief has to be supported by something. And we've never been presented by, with anything to support that in these proceedings. And are you contending, then, that both of these cases are moot? Yes. Even though you might get an answer that you like if this is not moot? Yes. Okay. Your Honor, I'd like to also refer briefly to the Ninth Circuit's recent opinion in the second M&M v. Lafayette case. Because in that case, the court said that there is no express private right of action to challenge a State agency's handling of a complaint process under 1412 or 1415. I think that does two significant things for our case. One is it basically overrules the holding of the Third Circuit in Beth v. Because in that case, the holding was there's an express private right of action under 1415 tied to some reasoning they applied from 1412. The other thing is I think it highlights a significance of a portion of 1412, which is the part that says there's no private right of action relating to a claim that a teacher is not highly qualified, but you can file a complaint procedure under that, 1412a14e. I think that says right there, it's not just that the complaint procedure is only detailed in the regulations and not detailed in the statute. The statute acknowledges the existence of the complaint procedure in several places. As we mentioned, 1415F3F says nothing in 1415 means that you can't file a complaint with a State agency. In 1411e2b, it talks about the State spending some of its funds on having a complaint procedure. And then 1412a14e, which says very specifically that here's an example of something where you have no private right of action, yet you can file a complaint procedure on it, the understanding being that there's no private right of action as to the complaint procedure. I'd also like to reference back to the Lucht case, which indicated that under 1415b6, the regulations provide another avenue of pursuing a 1415b6 complaint in some instances. But the important thing, I think, is that the right of action that's outlined in I-2 relates only back to those b6 complaints that are actually pursued in F in due process. So those compl yes, those complaints that are being handled under the regs, the complaint procedure, are another way of addressing a b6 complaint, but they never get to F, and therefore, they never get to I-2 in the judicial review. I'd like to speak for a moment about the authoritatively construe argument. I think that there are two problems with that argument before you even really get to talking about the regs, because the statute itself, the overlying principle is whether Congress intended in the statute a cause of action. And given the Court's reasoning in Lucht, which we've just discussed, the fact that it distinguished judicial review and stated it only applies to due process, given what we've mentioned about 1412a14e, it seems clear that this statute recognizes there's a due process procedure, recognizes there's a complaint procedure, and very clearly intends that judicial review only apply to the due process procedure. Having said that, the regulations themselves ---- Roberts, let me ask you this. So is your position that if a parent goes through the full CRP process, is not happy with the result, there's no direct avenue into court to get review? You're going to have to start all over again, as your opponent said, in a due process setting? If the parent is unhappy with the CRP result, the parent does have, assuming it meets criteria for a due process complaint, the parent has an avenue to go there. The parent ---- I know that. Yes. What I'm asking is, is that the sole means to get judicial review? You have to start all over again in a due process hearing? Or can you go straight from the CRP proceeding to court? I can think of two other ways, Your Honor. One would be the RIT procedure I mentioned. The third, in terms of trying to get to Federal court, would have to be under an exhaustion theory. But as we've pointed out, those exhaustion cases, an example is Christopher S., they are not providing any avenue to go against the State agency. I mean, that ---- No, no. I'm just trying to figure out, maybe you just don't have a position because you don't care, but if the CRP proceeding is just between the parent and the LEA, the parent is unhappy with that result. But has fully gone through that CRP process. Is there an implied right of action for the parent to go to court at that point? There's not, Your Honor. For the same reasons that we're discussing in terms of the analysis under Luct and the statutory analysis, there's no right for that parent to go either at that point. So if the parent wants judicial review and ---- I guess the parent then has two choices. Simply, the parent can initiate a due process hearing, or having instituted a complaint proceeding, if the parent thinks this is not going very well and wants to get a judicial review, it can institute, even though we have a pending complaint proceeding, it can institute a due process hearing, correct, or not? The parent, at any time ---- I shouldn't say it, they, or he or she. I mean, the parent is not ---- The parent, at any time, can institute a due process proceeding, no matter what stage the CRP is at. Even having, even the parent having himself or herself initiated the CRP proceeding. Yes. In the middle of that, the parent can say, you know what, I'm out of here. We're going to go do a due process hearing, with the notion that I'll get more rights in the due process hearing, and I'll have the right to judicial review. Yes. So that's the answer as to the parent is not out of luck. It's somewhat cumbersome, I have to say. Yes. Just to finish that point about the authoritatively construe, the regulations do go beyond the cause of action in the statute and imply new obligations to the extent we pointed out some of the differences between the two processes in our brief. For example, they expand the group of potential complainants beyond what could be at due process. They expand the scope of potential complaints or potential violations beyond what So they do impose new obligations in that sense. There's a related Spending Clause problem, which is trying to come to Federal Court and sue the CDE. The CDE would not expect in taking on these funds that in taking on this role as a neutral third-party decider of CRPs that it could be sued in court as to the result of every one of those. The exhaustion cases, as I said, don't provide a private right of action. They simply provide, in some cases, an exception to going against the other party, either the parent or the LEA. The Lake Washington case does indicate even more strongly in a CRP than in due process, as you said, Judge Watford, that there should be no implied right of action here on behalf of the LEA. If their case is procedural against the state because of issues around secondary considerations or burden of proof or preponderance of evidence, those are — there's no right of action on — in terms of LEAs going against the state for that. And even if their case is about the facts of the dispute with the parent on the merits of the case, there's no right of action for the LEA to go against the state for that. They — in that case, they would have an avenue to go to due process and litigate that with the parent. As far as mootness, I don't think I have anything more specific on that, Your Honor, if there are no further questions. Roberts. I actually have a question that's — Yes. I think not directly germane to the lawsuit, but I just want to kind of understand how the system works. Yes. I gather that this is a program that the State may or may not choose to participate in. If it says we don't want to participate, the statute simply doesn't apply. And the California has chosen to do so, I gather, in return for Federal money. Yes. How does the State decide which of the local districts get that money and how much? That's a question I am not — Not directly related to this lawsuit, of course, but it's critically important to each one of the districts because these are very expensive accommodations that are — that have to be made for many of these students. So how are you deciding how much money each of the districts get? I'm not expert enough in the funding to — in the funding to — I'd rather not misspeak, Your Honor. I apologize. Okay. Thank you. Thank you. I want to address some of the remedies that opposing counsel raised, which I don't believe are suitable. The State writ procedure being one of them, it's — that's a very generalized procedure, and I think he described it accurately, that when any public agency does something that you believe is wrong, you can take an administrative writ. But I do believe that ultimately we're talking about the CDE's determinations under Federal law, and that we should have a right to judicial review in the Federal courts if we're talking about interpretation of Federal statutes and regulations. And that's consistent with the general jurisdictional statement in the IDA at 1415. Let me just make sure I understand the last statement. So you're conceding that there was an avenue that you could have obtained judicial review on the precise issues that you're complaining about in both of these cases if you had pursued the State writ proceeding? Well, you know, I think he said it's too — it's under State law. So I'm not conceding that the State writ action would be appropriate. Well, I'm just — was that an available remedy for — an available avenue for you to pursue to get judicial review, albeit by a State judge rather than a Federal judge, but nonetheless, that you could have obtained judicial review of the things that you say the CDE is doing wrong? The standard of review is some mandatory action required by statute, generally by State law. I don't think it quite fits the scenario. We're not talking about necessarily a procedure that's set up in State law that CDE is violating. It needs to be some kind of mandatory requirement that a public agency is violating to get that kind of administrative writ proceeding. I mean, representing public entities, I know when it can be brought against us, they need to point to some kind of mandatory State obligation. Here we're having the CDE interpreting IDEA and Federal regulations in the context of a dispute between parties that have the relation — the educational relationship and the application of those laws to that relationship. I don't believe that the State administrative procedure, writ procedure, would be appropriate in addressing that type of issue, and that it still, under the general jurisdiction, needs to go to the Federal courts because we're talking about the State agency interpreting Federal law. I confess I'm not an expert on California writ procedure, but I heard your adversary first say you can get a writ for a violation of State law, and then when I said, well, wait a minute, this is Federal, he added Federal law, it sounds to me as though you're just saying you can get a writ for a violation of State law, and this has not been briefed to us. Is that right? Did I miss something in the briefing? No. We understood CDE did not believe there was any judicial review of any kind coming into this case. So I'm kind of positing or responding as I can, but having experience with that procedure, I don't think it's appropriate for this type of adjudication. I also want to respond to what he was talking about under the clear statement rule, which is the idea that a State agency or a public agency should not be saddled with any obligations that aren't clear under the statute. I don't think judicial review is quite an obligation that would necessarily be hidden from them or is onerous. When you look at the Pennhurst case where this rule comes from, there you were dealing with a State agency that all of a sudden was supposed to expend funds to this had to do with placements of mentally retarded students and that appropriate treatment wasn't to be given, so they had to overhaul programs and really expend State funds to overhaul their mental health education system. I don't think just being subject to judicial review as an adjudicative body in this situation is necessarily something that would fit under the clear statement rule. Well, the Pennhurst clear statement rule is in the context of sovereign immunity in the Eleventh Amendment, which I think is not at issue here. No, it's not being claimed. Although, as I said in my opening, I do believe CDE is seeking some kind of immunity from review in this case. You bet it is. And then finally, the exhaustion point I wanted to address, and that was raised as another exception. I don't think exhaustion really answers the question here today. There may be a situation where a parent has gone through a CRP process and then they would be accepted from due process because of the exhaustion argument, I would say the same reasoning applies to the LEA, that there may be reasons that we don't fit, as I just said in the beginning, we don't fit into the subject matter that's supposed to be handled in due process. And so because CRP is carved out as this alternate administrative procedure to deal with discrete issues, once the final decision is reached there, there needs to be direct judicial review rather than returning to a separate administrative process that may not fit. And the exhaustion exception, I think, would go both ways. So in closing, I just want to emphasize again that I think some kind of judicial review is necessary to meet the needs and the expectations of what the IDA was supposed to do, which was to address whether students with disabilities are getting an appropriate education. I think we have two administrative processes, and that's what Congress intended, that it would start in an administrative process, but that ultimately it would end in some type of judicial review, and the Federal courts would have the final say. Thank you. Thank you. Thank you very much. Ms. Smith and Mr. Garfinkel, I got you straight now. Thank you for very helpful arguments in both of these cases. Now submitted on the briefs are Yolo County Office of Education v. California Department of Education and Fairfield-Susan Unified School District v. State of California Department of Education. So both submitted now after argument. Thank you very much.
judges: Duffy, Fletcher, Watford